## SCOTT vs. MYATT & MOORE.

1. A written order, addressed to a mercantile firm, in these words : "Please let the bearer, Mr. O., have any little things he may stand in need of, and I shall be good for the same," held to be a direct, original undertaking, which would continue until revoked, or until the account was closed, and would embrace any articles, of no great value, which would come under the denomination of necessaries for a person in O.'s condition.

2. No notice of acceptance, or demand of payment, before suit brought, is necessary to charge one on whose written order (a direct, original undertaking) goods are furnished to another.

3. Evidence that the goods were charged on the merchant's books to the person to whom they were furnished, and that he afterwards settled the account, by paying a part in cash, and giving his note for the balance, is proper for the consideration of the jury, in determining whether the credit was given to him; but if the goods were sold on the faith of the written order, the rights and liabilities of the parties must be determined by it, and would not be affected by the fact that the merchant treated it as a collateral, instead of a direct undertaking, or that he charged the goods to the person who obtained them.

Appeal from the Circuit Court of Perry.

Tried before the Hon. Thomas A. Walker.

Assumpsit by Myatt & Moore against James Scott, to recover the amount of an account of $120 for goods, wares and merchandise. On the trial, the plaintiffs proved, and read in evidence to the jury, a written order of which the following is a copy :

"Messrs. Myatt & Moore : Please let the bearer, Mr. Orr, have any little things he may stand in need of, and I shall be good for the same. Very respectfully,

January 8, 1850. James Scott."

Plaintiffs then offered testimony, tending to show that they had sold goods, wares and merchandise to said Orr, from the 19th January, 1850, until the 1st of January, 1851, amounting to $105 30 ; that said goods were sold to said Orr on the faith of said written order, and that Orr was a stranger to them ; but there was no proof that plaintiffs had, at any time, given notice to defendant that they were selling, or had sold, any goods to said Orr on the faith of said order; and there was no

32

proof showing any demand of payment for said goods, from said defendant, at any time, otherwise than by the bringing of this suit. The defendant then proved, that the goods so sold and delivered to said Orr were all charged to said Orr alone on plaintiffs' books, and not to defendant; that Orr had settled said account, on the 27th February, 1851, by paying $60 in cash, and giving his note for the balance, dated February 27, 1851, and due one day after date, with interest from January 1, 1851. This note was produced by plaintiff, on notice from defendant, and was proved to be unpaid. Defendant also proved, that said Orr, in the fall of the year 1851, went to Texas, and had not since returned. "There was no proof to show that Orr was in need of the articles bought, except that plaintiffs were merchants, and that Orr delivered the order to them, applied for and bought the goods, and the character and quality of the goods sold to him; the same being articles of men's clothing, tobacco, &c."

On this evidence the court charged the jury, that the instrument sued on in this case was not a collateral guaranty, but was a direct obligation, from defendant to plaintiffs, to pay for the goods bought by said Orr, and that plaintiff could maintain this suit, without proof of notice of the acceptance of the order by plaintiffs, or of the sale of goods to said Orr on the faith thereof, or any demand of payment before suit brought; that the settlement of the account by Orr, by paying $60 in cash, and giving his note, due one day after date, for the balance, did not discharge defendant from liability, if otherwise liable, as to the balance of the account unpaid, under his obligation to plaintiffs, unless said note had been paid.

The defendant excepted to each part of this charge, and asked the court to give the following charges:

1. That, if they believed that plaintiffs, after they had received defendant's said written order, sold the goods embraced in their account to said Orr, charged said Orr alone with them on their books, and then settled said account with him as shown in the evidence, these acts of plaintiffs would show that they had treated said order as a collateral undertaking, and then plaintiffs could not recover, without proof of notice to defendant that his guaranty had been accepted.

2. That, if there was no evidence that plaintiffs, after receiv-

ing said order, gave notice to defendant that they accepted the same, or that they were selling goods to said Orr on the faith of it, but sold said goods to said Orr, charged them on their books to him, applied to him for settlement of the account, received $60 in cash from him, and took his note for the balance, due one day after date, then plaintiffs could not recover.

3. That the instrument sued on is a collateral, and not a primary obligation, from defendant to plaintiffs.

4. That the burthen of proof is on the plaintiffs, to show that said Orr stood in need of the articles sold to him by plaintiffs. This charge the court gave; and defendant then asked the court to charge, that if the only proof in the case, on this point, was, " that plaintiffs were merchants, and that Orr delivered the order to them, applied for and bought the goods, and the character and quality of the goods sold to him, the same being articles of men's clothing, tobacco, &c.," this proof would not be sufficient to entitle plaintiffs to a recovery; which charge the court refused to give.

The defendant excepted to these several refusals to charge as requested; and he now assigns for error the several rulings to which he excepted, as above shown.

1. W. GARROTT, for appellant:

1. The instrument sued on is a guaranty.—Goodman v. Parish, 2 McCord 259. The case of Bates v. Starr, 6 Ala. 697, though somewhat similar, is not precisely the present; and that case, it is submitted, is not correct. The case therein cited (Chase v. Day, 17 Johns. 114) is not at all in point.

2. But, if the instrument itself does not show that it was intended as a guaranty, the circumstances place the matter beyond doubt; and the intention of the parties, as shown by the proof, must determine the nature of the transaction.—Story on Contracts, p. 754 § 858; 11 U. S. Digest, p. 247 § 15. The facts that the plaintiffs below charged the goods to Orr alone, called upon him for payment, received from him a part payment in cash, and took his note for the balance; the absence of any notice of acceptance of the guaranty, or of the amount of the account contracted; and that no demand was made before bringing suit: all these facts show conclusively, that plaintiffs below regarded Orr as primarily liable to them, and Scott as collaterally

liable.—Parsons on Contracts, p. 499 ; Burge on Suretyship, pp. 22, 23 ; Babcock v. Bryant, 12 Pick. 133 ; Matthews v. Milton, 4 Yerger 576 ; Watson v. Wharam, 2 Term R. 80.

3. Scott's undertaking being thus shown to be collateral, he was entitled to notice of acceptance of his guaranty ; and as it was shown that no notice was given him, he is not bound. Story's Con. § 873 ; Parsons' Con. 501 ; Chitty's Con. 207, note 1 ; Louisville Man. Co. v. Welch, 10 How. U. S. R. 461 ; 22 Pick. 223, 228 ; Lawson v. Townes, 2 Ala. 373.

4. The debt not having been paid at maturity, Scott was entitled to notice thereof, and the bringing of the suit is not sufficient notice.—Courtis v. Dennis, 7 Metcalf 518. Scott having received no notice, until after Orr had gone to Texas, he could not indemnify himself ; he was discharged, therefore, because injury was done him.—Story's Con. § 874.

5. Orr gave his note, due one day after date, for the debt, and this novation or change of the debt discharged Scott.—Chitty on Contracts, pp. 528, 529 ; Story's Con. § 870.

6. This was not a continuing guaranty. It does not appear that Scott so intended it. The articles furnished were not only to be " little things," but such little things as Orr then—at the date of the order, and not in all time to come—needed. Plaintiffs had no right, without any notice whatever to Scott, to sell Orr goods for more than a year.—Creener v. Higginson, 1 Mason 323 (336) ; Rogers v. Warner, 8 Johns. 119 ; White v. Reed, 15 Conn. 457 (466) ; Whitney v. Groot, 24 Wend. 84.

7. The refusal of the court to charge that the facts, all of which are set out in the bill of exceptions, were not sufficient to show that Orr needed the articles furnished him, was wrong.— The same proof would have enabled him to set up a clothing store at Scott's expense.

8. Suppose, instead of giving the writing sued on, Scott had used the same words verbally to plaintiffs, in the presence or absence of Orr ; and thereupon Orr had bought the goods, which were charged to him, and for which he afterwards settled, and then left the country. Would not the case be within the statute of frauds ? and could plaintiffs recover against Scott ? Parsons on Contracts, p. 499 ; Burge on Suretyship, p. 22 ; 12 Pick. 133 ; 4 Yerger 576 ; 2 Term R. 80. If this position is correct, it shows that Scott's undertaking was collateral, and

not primary. The writing does not alter the character of the transaction ; it is only evidence of it.

JOSEPH R. JOHN, *contra* :

1. The instrument on which the action is founded, is not a collateral, but a direct undertaking on Scott's part to pay for the goods which Myatt & Moore might let Orr have under it. Therefore, no notice of acceptance, or demand of payment, was necessary.—Bates v. Starr, 6 Ala. 697 ; Oliver v. Hire & Le Baron, 14 *ib.* 250 ; Donley v. Camp, 22 *ib.* 659 ; 40 Law Lib. 37 (29).

2. The note given by Orr did not extinguish or affect Scott's liability : the note was not paid ; it was not taken in satisfaction or extinguishment of Scott's liability ; there was no extension of time, and no new consideration.—Muldon v. Whitlock, 1 Cow. 290, 306.

3. The contract was a continuing, as well as a direct undertaking, and bound Scott until he gave plaintiff's notice to furnish no more goods on its credit.—Pitman on Principal and Surety (40 Law Lib.), 39 (29) ; 2 Bouv. Inst. 59 § 1394 ; Parsons on Contracts, p. 508 ; Graham v. O'Neill, 2 Hall's Rep. 474.

4. The last charge requested was properly refused, because the court could not pass on the sufficiency of the evidence : that was a question for the jury exclusively.

GOLDTHWAITE, J.—We must hold the writing which was the foundation of this action a direct undertaking on the part of the appellant. He engages to be "good," that is, responsible, to the appellees, "for any little things Orr may stand in need of ;" and under the decisions in Bates v. Starr, 6 Ala. 697, and Oliver v. Hire and LeBaron, 14 Ala. 590, the engagement was not a collateral, but a direct promise ; and this being the case, no notice of acceptance, or demand of payment, was necessary.—Donley v. Camp, 22 Ala. 659 ; Matthews v. Christian, 12 S. & M. 595 ; Carson v. Hill, 1 McMullan 76 ; Whitney v. Groot, 24 Wend. 82.

It is urged, however, that the nature of the transaction may be determined by the circumstances ; and the evidence that the goods were charged to Orr,—that the account was settled with

him,—part paid in cash, and his note taken for the residue, show that it was a collateral engagement. We agree that these facts were proper to be looked to by the jury, for the purpose of ascertaining whether credit was given to Orr alone; for the reason, that if such was the case, no recovery could be had, the plaintiffs below not having acted upon the order; and if they let the goods go without reference to it, and solely upon the credit of the party who received them, they would not be allowed, on his failure to pay, to look to an assurance which did not influence their acts. But the evidence tends to show, that the goods were sold upon the faith of the order; and the question therefore is, whether the testimony first referred to can change the legal effect of the writing, if acted on. We have found no case which goes thus far; and it would be in conflict with all the rules of law, in relation to contradicting written instruments by parol evidence. There are many cases, where the promise was a verbal one, when the acts of the parties are admitted to explain; and if equivocal expressions were used in a written undertaking, then it would be open to explanation. This was, in effect, the reasoning of Bayley, J., in Simpson v. Penton, 2 Cromp. & Mees. 430; but here, under the force of our own decisions, we are bound to construe the writing as an original undertaking; there is no ambiguity, and that being the case, the only inquiry is, has it been acted upon by the appellees? If they parted with the goods on the faith of it, it makes no difference to whom they were charged, as the rights of the parties must be determined by the writing; and the fact that it was treated by those to whom it was addressed as a collateral, instead of a direct undertaking, cannot change it into the former. It follows from what we have said, that the payment by Orr of a part in cash, and giving his note for the balance, did not affect the liability of the appellant for the amount remaining unpaid, unless the note was received in satisfaction of the balance due; and of this, the mere taking of the note was not sufficient evidence.—Abercrombie v. Mosely, 9 Port. 145; Muldon v. Whitlock, 1 Cowen 290; Edwards v. Deifendorf, 5 Barb. Sup. Ct. 398; Johnson v. Cleaves, 15 N. H. 332; Gordon v. Price, 10 Ired. 385.

Neither do we think that the words can fairly be supposed to mean, that Orr was only to have such articles as he actually

stood in need of. We are not tied down to a strict and literal interpretation of instruments of this character, but must adopt the construction which, without forcing or doing violence to the language used, ascribes the most reasonable, probable and natural conduct to the parties, (Bell v. Bruen, 1 How. Sup. Ct. 169, 186); and it is not to be supposed, that when a man gives an order like this, the other party is bound to inquire, and ascertain with certainty, before he acts upon it, whether the person in whose favor it is given absolutely needs the goods. A just and reasonable construction of the terms of the order, in our opinion, would extend it to any articles of no great value, which would come under the denomination of necessaries for one in the condition of Orr; and as the account included articles of clothing, a general charge that a recovery could not be had for the items of the account, would have been improper.

The only remaining question is, whether the writing is continuing in its character. The words are, " let the bearer, Mr. Orr, have any little things he may stand in need of, and I shall be good for the same." It is limited in two particulars; and had the promisor intended to have confined it to such articles as Orr required at the time it was drawn or presented, he should have used words which would have expressed his intention more clearly. The rule is, that where the language is susceptible of two meanings, it should be taken most strongly against the guarantor, and in favor of the party who has parted with his property upon the faith of the interpretation most favorable to his rights.—2 How. Sup. Ct. 426, 450, and cases there cited. Here, as we have said, the accountability of the appellant is limited in two respects; but there are no words of limitation as to the time it is to continue. The articles to be supplied are those which Orr "may stand in need of;" and the word " may" can certainly as appropriately be referred to the future, as the present wants. Such, we think, would be the ordinary understanding, and upon any other construction it would be liable to mislead. We must, for these reasons, hold the order as continuing, until the account was closed, or the order revoked by the appellant.

The judgment is affirmed.